# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| DENISE R. MCGANN, | DOCKET NUMBER |
| Appellant, | DC-0752-14-0958-I-2 |
| v. | |
| GENERAL SERVICES ADMINISTRATION, | DATE: December 29, 2016 |
| Agency. | |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Christina L. Quashie, Esquire, Washington, D.C., for the appellant.

Mary Clare G. Claud, Washington, D.C., for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which sustained her 30-day suspension. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review.  Except as expressly MODIFIED by this Final Order to analyze the appellant's claim of retaliation for protected equal employment opportunity (EEO) activity under the framework set forth in *Savage v. Department of the Army*, 122 M.S.P.R. 612 (2015), we AFFIRM the initial decision.

## BACKGROUND

¶2    Effective July 2, 2014, the agency suspended the appellant for 30 days from her GS-15 position as a Supervisory Human Resources Specialist (Director of Human Resources) with the agency's Office of Inspector General based on four charges:   (1) conduct unbecoming (three specifications); (2) absence without leave (one specification); (3) failure to follow instructions (two specifications); and (4) insubordination (one specification).   MSPB Docket No. DC-0752-14-0958-I-2, Appeal File (I-2 AF), Tab 11 at 5-17.

¶3    In support of the insubordination charge,[2] the agency alleged as follows:

> On March 31, 2014, you sent [your first-level supervisor] an email at 3:43 p.m.  The subject line of your email was "Please stop Acting Like Bullies."  In the body of the email you requested that [your

---

[2] We do not address the remaining three charges because they are not at issue on review, as the appellant does not challenge the administrative judge's findings that the agency proved those charges by preponderant evidence.  Initial Decision (ID) at 2‑18.

> first and second-level supervisors] "stop acting like the bullies I know you to be." Disparaging your first and second level supervisors in such a manner is unprofessional, and disrespectful; i.e., insubordinate.[3]

I-2 AF, Tab 10 at 34, 67.

¶4    The appellant filed a Board appeal challenging her suspension and requesting a hearing. MSPB Docket No. DC-0752-14-0958-I-1, Initial Appeal File, Tab 1 at 2. She raised affirmative defenses of retaliation for protected EEO activity, disability discrimination based on failure to accommodate, and reprisal for whistleblowing. *Id.* at 6; I-2 AF, Tab 13 at 10.

¶5    After holding a hearing, the administrative judge issued an initial decision that affirmed the appellant's suspension. I-2 AF, Tab 30, Initial Decision (ID) at 1, 35. The administrative judge found that: the agency proved all of the charges and specifications by preponderant evidence, ID at 2-20; the appellant did not prove her affirmative defenses,[4] ID at 20-32; and the 30-day suspension was a reasonable penalty and promoted the efficiency of the service. ID at 32-35.

¶6    The appellant has filed a petition for review. MSPB Docket No. DC-0752-14-0958-I-2, Petition for Review (PFR) File, Tab 1. The agency has filed a response in opposition to the petition for review. PFR File, Tab 4. The appellant has filed a reply to the agency's response.[5] PFR File, Tab 7.

---

[3] The agency order entitled "Maintaining Discipline" defines insubordination to include "disrespect, insolence and like behavior." I-2 AF, Tab 11 at 23.

[4] Although the administrative judge incorrectly stated that the appellant alleged disability discrimination based on disparate treatment, ID at 23, he correctly analyzed her discrimination claim as one of disability discrimination based on a failure to accommodate, ID at 23-29.

[5] In her reply, the appellant argues that the deciding official improperly considered her attorney's request for an extension of time to present an oral reply to the proposed suspension as an aggravating factor in determining the penalty. PFR File, Tab 7 at 7-8. We have not considered this argument because the appellant did not raise it as an issue in her petition for review. *See* 5 C.F.R. § 1201.114(b) (the Board normally will consider only issues raised in a timely filed petition for review or timely filed cross petition for review).

**ANALYSIS**

The appellant's due process argument is not properly before the Board.

¶7      The appellant argues on review that the administrative judge improperly failed to address her argument that the agency violated her due process rights when it suspended her because the deciding official sustained the insubordination charge based on information that was not provided to her. PFR File, Tab 1 at 4, 10-13. More specifically, the appellant argues that the deciding official considered her conduct during a March 25, 2014 mid-year evaluation meeting and her March 26, 2014 reprimand for that conduct in deciding to sustain the insubordination charge; however, the agency never notified her that it was considering those matters. *Id.* at 10-13.

¶8      The appellant did not raise this claim prior to the prehearing conference or in response to the administrative judge's prehearing conference summary,[6] in which he identified the issues in the appeal and notified the parties that other issues would not be considered unless they filed a written objection or motion to supplement the summary. I-2 AF, Tab 21. The due process issue was not listed in the prehearing conference summary, and the appellant did not object to that summary. We find that the appellant clearly was aware of the alleged due process violation during the prehearing conference because the deciding official's

---

[6] The record indicates that the appellant did not raise her due process claim until her closing argument. I-2 AF, Hearing Transcript at 229-37. In that regard, we find unpersuasive the appellant's argument on review that she properly raised her due process claim in this appeal by alleging in her written response to the proposed suspension that the action violated her rights. PFR File, Tab 7 at 5; I-2 AF, Tab 10 at 68. Although the appellant alleged generally that the proposed suspension violated her rights, she did not specifically claim a due process violation resulted from the agency's purportedly having considered ex parte information. Moreover, the appellant's assertion that she raised the due process claim in response to her proposed suspension is inherently inconsistent with the premise of her claim, i.e., that the deciding official improperly considered information that was not provided to her. In other words, it would have been impossible for the appellant to have known, when she submitted her response to the proposal, what information the deciding official would or would not be relying upon.

decision letter stated that she had considered the appellant's March 26, 2014 reprimand in sustaining the insubordination charge. I-2 AF, Tab 11 at 12. Therefore, the appellant has not demonstrated good cause for failing to raise the due process issue in response to the prehearing conference summary. *See* 5 C.F.R. § 1201.24(b) (requiring an appellant to show good cause for raising claims or defenses for the first time after the conference defining the issues in the case). Under the circumstances, we find that, because the appellant did not object to the accuracy of the prehearing summary when given the opportunity to do so, she failed to preserve any issue regarding her due process rights for review. *See Crowe v. Small Business Administration*, 53 M.S.P.R. 631, 635 (1992) (finding that an issue is not properly before the Board when it is not included in the administrative judge's memorandum summarizing the prehearing conference that states that no other issues will be considered unless either party objects to the exclusion of that issue in the summary).

The administrative judge correctly found that the agency proved the insubordination charge by preponderant evidence.

¶9      As previously noted, the appellant does not challenge the administrative judge's findings that the agency proved the first three charges by preponderant evidence, ID at 23-18, and we discern no reason to disturb these findings. Regarding the insubordination charge, the appellant argues on review that her email constitutes protected activity under the opposition clause of title VII of the Civil Rights Act of 1964, which prohibits agencies from retaliating against employees who oppose unlawful employment practices. PFR File, Tab 1 at 13; I−2 AF, Tab 10 at 73; *see* 42 U.S.C. § 2000e-3(a); *see also Martin v. Department of the Air Force*, 73 M.S.P.R. 590, 594 (1997) (recognizing that the opposition clause applies in Board proceedings). In support of her claim, the appellant notes that the Equal Employment Opportunity Commission (EEOC) considers protected "opposition" activity to include "[c]omplaining to anyone about alleged discrimination against oneself or others." PFR File, Tab 1 at 13 (quoting EEOC

Compliance Manual, Section 8: Retaliation).[7]  The appellant contends that her March 31, 2014 email qualifies as protected oppositional activity because she was alleging that her supervisors were harassing her regarding her reasonable accommodation request.  *Id.* at 14; I-2 AF, Tab 10 at 73.

¶10    The administrative judge rejected this argument in the initial decision, finding that the language in the appellant's email was "incendiary and disrespectful," and that her accusations of bullying were unprotected under any recognized standard of oppositional activity.  ID at 20.  The administrative judge concluded that the appellant sent the email to her supervisors as a "derogatory and inflammatory rejection of their considered action to regulate her attendance and enforce existing standards."  *Id.*  Therefore, the administrative judge found, the agency proved the insubordination charge.  *Id.*

¶11    The appellant challenges this finding on review, reasserting her argument that the statements in her email accusing her supervisors of acting like bullies are protected under the opposition clause because she was opposing her supervisors' harassment and discrimination.  PFR File, Tab 1 at 13-14.  As the appellant acknowledges, however, for conduct to qualify as protected activity under the opposition clause, the manner of opposition must be reasonable and based on a reasonable belief that a violation occurred.  *Id.* at 14 (citing EEOC Compliance Manual, Section 8)[8]; *see Smith v. Texas Department of Water Resources*, 818 F.2d 363, 366 (5th Cir. 1987) (stating that the opposition clause "was not intended to immunize insubordinate, disruptive, or nonproductive behavior at work") (quoting *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981)).  To

---

[7] Effective August 25, 2016, the EEOC Compliance Manual, Section 8:  Retaliation, was superseded by the EEOC Enforcement Guidance on Retaliation and Related Issues (*available online at* http://eeoc.gov/laws/guidance/retaliation-guidance.cfm).  A copy of the EEOC Compliance Manual is not in the record, and it is no longer available online.

[8] The EEOC Enforcement Guidance on Retaliation and Related Issues similarly provides that, "[f]or statements or actions to be protected opposition . . . they must be based on a reasonable good faith belief that the conduct opposed violates the EEO laws, or could do so if repeated."

determine whether it was reasonable for the appellant to believe that her supervisors harassed and discriminated against her regarding her reasonable accommodation request when she accused them of being bullies in her March 31, 2014 email, we have examined the circumstances surrounding her email.

¶12    The record shows that on March 25, 2014, the appellant received a temporary reasonable accommodation (TRA), which allowed her to telework up to 3 days a pay period on days when she had scheduled medical appointments, provided that she notified her supervisor of her desire to telework no later than 6:00 p.m. on the day before her scheduled appointment.  I-2 AF, Tab 10 at 58.  The TRA also allowed the appellant to telework due to an emergency medical need, but required her to provide advance written notice to her supervisor via email no later than the start of her tour of duty.  *Id.*  In addition, the TRA provided that, on the days that the appellant teleworked due to a medical appointment, she was required to send her supervisor an email stating when she left her alternate worksite to attend the appointment and when she returned from the appointment.  *Id.* at 59.  Finally, the TRA notified the appellant that failure to provide advance written notice of her desire to telework due to a medical appointment could result in the denial of her request.  *Id.*

¶13    On Wednesday, March 26, 2014, the appellant asked to telework due to weather conditions, and her supervisor informed her that she could telework that morning until the ice melted.  *Id.* at 45-46.  Later that morning, the appellant's supervisor sent her an email explaining that the only person in the human resources office that day had to go home because she was ill, and asking the appellant to come into the office as soon as the ice melted and she was able to do so safely.  *Id.* at 42.  When the appellant did not respond to that email or a subsequent voicemail message, she sent the appellant another email inquiring about her status.  *Id.* at 41.  In response, the appellant sent her supervisor an email stating that the ice had not melted and that she did not think she would be able to make it in that day.  *Id.*  Forty minutes later, the appellant sent her

supervisor another email stating, "I also had a medical appointment." *Id.* at 45. The appellant's supervisor then sent her an email requesting the following information regarding her appointment, in accordance with the TRA: the time of the appointment; the time that she left her alternate worksite to attend the appointment; and the time that she returned from the appointment. *Id.* at 44. The appellant did not provide the requested information, and her supervisor sent her an email the following day, Thursday, March 27, 2014, again asking for that information; however, the appellant did not respond. *Id.* at 43-44.

¶14 The appellant did not report to work on Monday, March 31, 2014, and her supervisor sent her an email more than an hour after the appellant's scheduled start time inquiring about her status that day and asking whether she was coming to the office.[9] *Id* at 63. In response, the appellant sent her supervisor an email stating that she was at a clinic and would like to telework. *Id.* The appellant's supervisor denied the appellant's request, explaining that she had not complied with the terms of her TRA. *Id.* at 62. The appellant responded, "That's because the terms are unreasonably burdensome." *Id.* at 61. The appellant's supervisor then sent the appellant an email notifying her that, regardless of the terms of her TRA, the appellant was required to notify her of her status. *Id.* In the email, the appellant's supervisor directed her to report to work, answer the questions in the March 27, 2014 email, and provide information regarding her appointment that morning, including when she made the appointment and why she did not provide advance notice of the appointment. *Id.* About 4 hours later, the appellant sent the email that is the basis for the insubordination charge. *Id.* at 67.

¶15 Based on our review of the record, it appears that the appellant accused her supervisors of being bullies because her first-level supervisor denied her request to telework on March 31, 2014, and repeatedly asked the appellant to provide information to comply with the TRA. We disagree with the appellant's

---

[9] The record does not reflect what, if anything significant, occurred on Friday, March 28.

contention that those terms were unreasonably burdensome. We also find that the appellant's supervisor properly denied the appellant's telework request on March 31, 2014, because the appellant failed to comply with the terms of the TRA and refused to respond to her supervisor's requests for information. It is an axiom of civil service law that agency management may impose reasonable conditions regarding requests for leave and employees must comply with the lawful orders of their supervisors. *See Dias v. Department of Veterans Affairs*, 102 M.S.P.R. 53, ¶ 14 (2006), *aff'd*, 223 F. App'x 986 (Fed. Cir. 2007). Given the circumstances, we find that the appellant did not have a reasonable, good-faith belief that her supervisors were discriminating against her or harassing her when she accused them of being bullies. Therefore, we agree with the administrative judge that the appellant's allegations of bullying are not protected oppositional activity. We also agree with the administrative judge that the language in the appellant's email was incendiary and disrespectful. ID at 20. Accordingly, we find no reason to disturb the administrative judge's finding that the agency proved the insubordination charge. *Id.*

The appellant failed to prove her affirmative defense of retaliation for protected EEO activity.[10]

¶16      On review, the appellant challenges the administrative judge's finding that she failed to prove her affirmative defense of retaliation for EEO activity. PFR File, Tab 1 at 13-17; ID at 20-23. In analyzing the appellant's retaliation claim, the administrative judge stated that, to meet her ultimate burden of proof on retaliation for EEO activity, the appellant must establish not only that she engaged in protected activity and that the accused official was aware of that activity, but also that there is a "genuine nexus" between the protected activity

---

[10] In her petition for review, the appellant does not challenge the administrative judge's findings that she failed to prove her claims of disability discrimination and whistleblower reprisal. ID at 23-32. Although she appears to reiterate her whistleblower reprisal claim in her reply to the agency's response to her petition for review, PFR File, Tab 7 at 11-12, we have not considered this argument because the appellant did not raise it as an issue in her petition for review, *see* 5 C.F.R. § 1201.114(b).

and the adverse employment action. ID at 20-21. The administrative judge explained that, to establish such a nexus, the appellant must prove that the employment action was taken because of the protected activity. *Id.* at 20.

¶17 Applying this standard, the administrative judge found that the appellant engaged in protected activity by filing a request for reasonable accommodation, and that the proposing and deciding officials were aware of her protected activity. ID at 21-22. The administrative judge further found, however, that the appellant failed to establish a nexus between her activity and the suspension action. ID at 23. In making this finding, the administrative judge credited the testimony of the proposing and deciding officials that the appellant's suspension was based on her misconduct, not her protected EEO activity. ID at 22. Specifically, the administrative judge found that these officials testified in a straightforward, confident manner, and that their recollections "have remained consistent over time." *Id.* He further found that the appellant's retaliation claim was merely speculation concerning the basis for the action and that she did not present evidence to support her retaliation claim. ID at 22-23.

¶18 After the hearing, but prior to the issuance of the initial decision in this matter, the Board issued *Savage*, 122 M.S.P.R. 612, ¶¶ 35-51, clarifying the standards and procedures governing its adjudication of claims under title VII of the Civil Rights Act of 1964 (codified in pertinent part at 42 U.S.C. § 2000e‑16).[11] Under *Savage*, when an appellant asserts an affirmative defense of discrimination or retaliation under 42 U.S.C. § 2000e-16, the Board first will inquire whether the appellant has shown by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action. *Id.*, ¶ 51. Such a showing is sufficient to establish that the agency violated 42 U.S.C. § 2000e-16, thereby committing a prohibited personnel

---

[11] Although *Savage* post-dated the hearing, it did not materially affect the appellant's ability to establish her retaliation claim.

practice under 5 U.S.C. § 2302(b)(1).  *Id.*  If the appellant meets her burden, the Board then will inquire whether the agency has shown by preponderant evidence that the action was not based on the prohibited personnel practice, i.e., that it still would have taken the contested action in the absence of the discriminatory or retaliatory motive.  *Id.*  If the Board finds that the agency has made that showing, its violation of 42 U.S.C. § 2000e‑16 will not require reversal of the action.  *Id.*

¶19    Because the administrative judge did not consider the appellant's retaliation claim under the framework set forth in *Savage*, we modify the initial decision to do so.  Based on our review of the record, we find that the appellant failed to meet her initial burden of showing by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action.  *Id.*, ¶ 51.  As the administrative judge correctly found, the appellant did not present evidence to support her retaliation claim, and her claim is essentially mere speculation concerning the basis for her suspension.  ID at 22-23.  Moreover, we discern no reason to disturb the administrative judge's demeanor‑based credibility determinations regarding the testimony of the proposing and deciding officials that the appellant's suspension was based on her misconduct, not her protected EEO activity.  ID at 22; *see Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (holding that the Board must defer to the administrative judge's credibility determinations because they are based, explicitly or implicitly, on observing the demeanor of the witnesses that testified at the hearing, and may overturn such determinations only when it has sufficiently sound reasons for doing so).

¶20    In support of her retaliation claim, the appellant argues on review that her March 31, 2014 email constitutes protected activity and she asserts that the deciding official's testimony that she sustained the insubordination charge based on that email is direct evidence of reprisal.  PFR File, Tab 1 at 13-15.  The appellant contends that "[w]ith this direct evidence of reprisal, [she] proved her affirmative defense of retaliation."  *Id.* at 17.

¶21     For the reasons discussed above, however, we find that the appellant's email does not qualify as protected activity. Therefore, the agency's decision to discipline the appellant for that email does not constitute reprisal for protected EEO activity. Accordingly, we find that the appellant failed to prove her affirmative defense of retaliation for protected EEO activity.

The administrative judge correctly found that the penalty is reasonable and promotes the efficiency of the service.

¶22     When, as here, all of the charges have been sustained, the Board will review an agency-imposed penalty only to determine if the agency considered all of the relevant *Douglas* factors, and exercised management discretion within tolerable limits of reasonableness. *Holland v. Department of Defense*, 83 M.S.P.R. 317, ¶ 9 (1999); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981). The Board will modify the agency's chosen penalty only if it finds that the agency's judgment clearly exceeds the limits of reasonableness. *Douglas*, 5 M.S.P.R. at 306.

¶23     Here, the decision letter shows that the deciding official considered the relevant factors, including the seriousness of the appellant's misconduct, which she found "serious and egregious." I-2 AF, Tab 11 at 13. The deciding official also considered that the appellant occupied a position of trust, and concluded that the appellant's misconduct had caused her to lose trust and confidence in the appellant's ability to carry out her duties with integrity. *Id.* The deciding official also considered the appellant's prior discipline for disrespectful behavior, and found that the appellant had exhibited a troubling pattern of "willful behavior." *Id.* The deciding official considered the appellant's years of service and previous work history as mitigating factors, but found that these factors were outweighed by the seriousness and egregiousness of the appellant's misconduct. *Id.*

¶24     In assessing the reasonableness of the penalty, the administrative judge found that the deciding official properly considered the *Douglas* factors in deciding that a 30-day suspension was appropriate. ID at 34. In particular, the

administrative judge noted that the deciding official considered the repeated and intentional nature of the appellant's misconduct, her loss of trust and confidence in the appellant as a result of her failure to report to work or comply with standard instructions to justify her absence, the appellant's prior disciplinary record, and her failure to express remorse or recognize that she had done anything wrong. ID at 33-34. The administrative judge also noted that the deciding official considered the appellant's years of service and record of good performance as mitigating factors. ID at 34. The administrative judge found that the penalty was warranted under the circumstances, was within the tolerable limits of reasonableness, and promoted the efficiency of the service. *Id.* Recognizing that the Board must accord proper deference to the agency's primary discretion in managing its workforce, we see no reason to disturb this finding. *See Douglas*, 5 M.S.P.R. at 306. Accordingly, we affirm the initial decision as modified.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request further review of this final decision. There are several options for further review set forth in the paragraphs below. You may choose only one of these options, and once you elect to pursue one of the avenues of review set forth below, you may be precluded from pursuing any other avenue of review.

Discrimination Claims: Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). Title 5

of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order.  f you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court‑appointed lawyer and to waiver of any requirement of

prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Other Claims:  Judicial Review

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices described in 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or by any court of appeals of competent jurisdiction.  The court of appeals must receive your petition for review within 60 days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(B)  (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.  Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below: http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.



FOR THE BOARD:                                    _____
                                                 Jennifer Everling
                                                 Acting Clerk of the Board

Washington, D.C.